OKLAHOMA RY. CO. et al. v. WILSON.

No. 34242.   Jan. 16, 1951.
Rehearing Denied Feb. 6, 1951.

*227 P. 2d 392.*

Richardson, Shartel & Cochran, F. M. Dudley, and R. C. Jopling, Jr., Oklahoma City, for plaintiffs in error.

Butler & Rinehart, Oklahoma City, for defendant in error.

HALLEY, J. The plaintiff, Mrs. Jewel Wilson, sued the Oklahoma Railway Company, a corporation and common carrier for hire, and B. D. Roberts, its agent and employee, for damages for personal injuries. We shall refer to the

parties as plaintiff and defendants, as they appeared in the trial court.

Plaintiff alleged that on May 19, 1948, she was a paying passenger on a bus operated by B. D. Roberts as the agent and employee of the Oklahoma Railway Company over the streets of Oklahoma City. That the bus was traveling west along Main street, and upon reaching a stop zone in front of the J. C. Penney store, it stopped to allow passengers to leave the bus by the rear door and to take on new passengers. That plaintiff desired to alight at that point, and upon attempting to leave the bus, the bus started suddenly, and one of her feet was caught by the sudden closing of the rear door, which caused plaintiff to be thrown to the pavement and dragged several feet, resulting in severe bruises to her arms and left leg, her back, and other portions of her body, and also resulting in severe pain and shock. She was confined to a hospital for a month and one day and given what was termed "conservative treatment", and later required a surgical operation on her spine, which improved but did not entirely relieve her suffering. It was shown that a nerve root had been impinged at the fifth lumbar vertebra, and that this condition was relieved by the operation. It was not disputed that she had incurred expenses at the hospital and medical care in the sum of $1,283.65. Plaintiff had been a registered nurse for some 25 years, and at the time of the accident was so employed as a general nurse for $200 per month. She was 48 years of age and had a life expectancy of 22.36 years. She alleged that her injuries had rendered her incapable of following her profession further, and she was shown to have been working for room and board at the time of the trial. She alleged that her injuries were permanent, and prayed for damages in the sum of $30,000 and her actual expenses, as above set out.

The defendants demurred to the evidence at the close of plaintiff's evidence, and also moved for a directed verdict at the close of all the evidence in the case, which demurrer and motion were overruled.

The jury returned a verdict for $24,783.65. On motion for new trial, the court announced that it would sustain the motion unless the plaintiff filed a remittitur of $9,000. This was done, and judgment was rendered for $15,783.65.

The defendants urge three grounds for reversal, the first being that the question of permanent injury should not have been submitted to the jury because of lack of evidence; the second being that the original verdict of $24,783.65 and the eventual judgment of $15,783.65 were so excessive as to shock the sense of justice and were unreasonable; and the third being that the original verdict of $24,783.65 was so excessive as to indicate that the jury was actuated by bias, prejudice and passion.

As to defendant's first ground, it is to be borne in mind that they did not demur to that part of the plaintiff's evidence which they claim was not sufficient to show permanent injury. Neither did their motion for a directed verdict raise such issue. The demurrer and motion for directed verdict went to the sufficiency of the evidence, and in this case, where the liability of the defendants is not challenged and it was only a question for the jury to determine how much the defendants would be liable for, it was incumbent upon the defendants to call the court's attention to what they claimed was the lack of evidence on the matter of permanent injury. They did not request the court to instruct the jury not to consider the element of permanent damage, and did not except to the instruction that was given by the court on the question of whether or not the plaintiff's injury was permanent. This omission is understandable, for we believe that there was sufficient evidence in this case to authorize the submission of the question as to whether or not the injuries were permanent to the

jury. Two medical experts testified relative to the permanency of plaintiff's injuries; one was a witness for the plaintiff and the other a witness for the defendants. Dr. Bell, who testified for the plaintiff and was her regular physician, testified as follows:

"Q. What is your judgment or opinior, based upon your knowledge of this patient and her age and so forth? A. Most of these patients that I have followed after this type of procedure have had some permanent disability resulting. That tends to decrease as the months pass, depending upon what their occupation is after the operation.

"Q. Doctor, do some of these patients that have gone through this experience, these operations, have to have re-operations? A. They have been reported.

"     . . .

"Q. Do you believe, in your opinion, Doctor, that she will ever be able to go back? A. I can't answer that question yes or no. I think it is unwise for her to go back doing that type of work.

"Q. What is apt to happen if she does go back doing that type of work? A. She is likely to have a pain in her neck.

"Q. Then, to the extent that she might have to do strenuous work such as a general duty nurse might be required to do at times, you don't advise her to do that? A. Certainly not at this time."

Dr. C. R. Rountree, who examined the plaintiff shortly before the trial for the defendants, testified as follows:

"Q. And it is your opinion, I believe, as you have indicated in the report here that Mr. Dudley has, that you feel, taking everything into consideration, that this plaintiff will have a permanent disability as a result of this injury? A. I think she may have. Unless she goes ahead to a complete recovery, she will have a disability."

Dr. Rountree made a written report of his examination just one day before the date of the trial, and a portion of his report is as follows:

"It is my judgment that her improvement will continue as time goes on.

In spite of this, I think that she will have a small amount of permanent partial disability as a result of this accident."

It is not necessary that the evidence adduced to prove that an injury is permanent be so positive and conclusive as to establish that fact beyond any shadow of doubt before it can be submitted to a jury. It is sufficient if it reasonably tends to establish such fact. Jacobsen v. Howard, 164 Okla. 88, 23 P. 2d 185.

As to defendants' second alleged error, that the original verdict for $24,-783.65 and the eventual judgment for $15,783.65 are so excessive as to strike one at first blush as being beyond all measure unreasonable and to shock one's sense of justice, we cannot agree. We do agree that the original verdict returned by the jury appears to be excessive. However, the amount of the verdict itself is the only thing in the record which indicates that the jury was biased or prejudiced or in any manner guilty of misconduct. The plaintiff was 48 years of age and had a life expectancy of 22.36 years, and was earning, at the time of her injury, $200 per month. It is clear that she could not, at the time of the trial, resume her former work as a regular nurse. It is not disputed that whatever her injuries were, they were the result of the accident complained of. The plaintiff testified that her spinal operation was in September preceding the date of the trial in December. She testified that her condition had improved, but that she still suffered pain from her injuries. The remittitur of $9,000 was over one-third of the original verdict. We do not feel that the judgment is so excessive as to justify a further reduction or reversal of the case on account of the amount of the judgment.

For the third ground for reversal it is urged that the judgment is so excessive as to indicate conclusively that the jury was actuated by bias, prejudice, or passion, and that the court should therefore have granted defend-

ants' motion for a new trial. We agree that where the verdict is so excessive as to show conclusively that the jury was actuated by bias, prejudice, or passion, the trial court or this court has authority and owes the duty to reverse the judgment or to grant a new trial, in the interest of justice. However, as suggested by the plaintiff, this court has recognized that courts may properly consider existing economic conditions in determining whether or not a judgment is excessive. In Bucktrot v. Partridge, 130 Okla. 122, 265 P. 768, it was said by this court, in the body of the opinion:

"In defendant's third proposition it is urged that the verdict of the jury was excessive, and by the amount of the verdict, passion and prejudice against defendant is indicated. Counsel cite numerous authorities in support of this contention. It will be observed, however, that the authorities cited are opinions written several years ago, and this court will take judicial notice of the fact that the purchasing power of a dollar is much less today than it was a few years ago; that the earning capacity of a man or woman is much more today, when measured in dollars and cents, than it was a few years ago, and the tendency during recent years is toward allowing much larger verdicts to stand than were permitted a few years ago."

No question was raised but that $1,283.65 of plaintiff's verdict was for medical and hospital care, and as to the correctness of that amount there is no controversy. We cannot say, under existing conditions, that $14,500 is too large an amount for the plaintiff to receive for her injuries. Unquestionably she has suffered a great deal of pain, a major operation was made on the spine and the nerves were adjusted. There was evidence that she would not be able to carry on her profession for the rest of her life. The combination of the loss of her earnings and the pain and suffering that she of necessity endured could very easily amount to $14,500. Certainly the verdict should not be set aside because of bias, prejudice or passion.

The judgment is affirmed.