Euna LEE, Administratrix of the Estate of Samuel P. Lee, Deceased, Plaintiff in Error,

v.

Daniel SWYDEN, Defendant in Error.

No. 37746.

Supreme Court of Oklahoma.

Dec. 24, 1957.

Arnett & McDaniel, by Hollis Arnett, Mangum, for plaintiff in error.

Pierce, Mock & Duncan, Oklahoma City, for defendant in error.

HALLEY, Justice.

This is an action by Euna Lee, administratrix of the estate of her deceased husband, Samuel P. Lee, against Daniel Swyden, to recover damages for the wrongful death of Samuel P. Lee and property damage, alleged to have been suffered through the negligence of the defendant. Judgment was rendered for the defendant, based upon a jury verdict, and the plaintiff has appealed. We shall refer to Euna Lee, administratrix, as plaintiff and Daniel Swyden as defendant, as they appeared in the trial court.

Plaintiff alleged that on March 5, 1956, her husband, Samuel P. Lee, was driving a pickup truck south on a county road about a quarter of a mile east of Granite in Greer County, Oklahoma, at about 7:30 P.M., and that Daniel Swyden was driving an Oldsmobile west on Oklahoma Highway No. 9, each vehicle being owned by the driver thereof.

That Samuel P. Lee had entered the intersection of the county road and Highway No. 9 and had turned east thereon, when his pickup truck was violently struck in the south lane of Highway No. 9 by the car driven by the defendant; that the impact was of such force that it knocked his pickup back west for some twelve feet, and as a result Samuel P. Lee was thrown therefrom for a distance of about twenty-five feet, his body, head and limbs were crushed and injured to such an extent that he died March 6, 1956.

Plaintiff alleged that such injuries were caused by the gross negligence of Daniel Swyden in failing to keep his car under proper control; in driving at an excessive rate of speed, and at a speed greater than would permit him to bring the car to a stop within the assured clear distance ahead; that defendant failed to keep a proper lookout and in failing to yield the right of way to Samuel P. Lee, who had entered the intersection first; and in turning his car left and striking the pickup in the south lane of the Highway No. 9.

Plaintiff alleged the cost of burial, medical expense, hospital bills, cemetery lot and damage to the pickup amounted to $1,875.25; that deceased was 48 years of age with a life expectancy of 22.88 years; was earning $5,000 a year, about half of which he contributed to his wife, and prayed for a total of $61,075.25.

Defendant filed a general demurrer and when it was overruled, answered by general denial, and alleged that deceased was guilty of negligence which was the proximate cause of or contributed to the accident in that he failed to yield the right of way to a vehicle traveling on a through highway, and also failed to keep a proper lookout for other vehicles using the highway and in failing to exercise proper care under the circumstances, in that deceased was making an improper turn onto State Highway No. 9, in violation of law. Defendant also alleged an unavoidable casualty.

On November 8, 1956, plaintiff filed a motion asking for authority to ask each juror on voir dire examination the following question:

"Are you or either of you an official or employee of the Oklahoma Farm Bureau Mutual Insurance Company or is any member of your immediate family connected in any way with that company; or do you or any member of your immediate family have a policy of insurance in said Oklahoma Farm Bureau Mutual Insurance Company?"

Attached to this motion was an affidavit in which she asked permission to file, and moved that any juror answering the above

question in the affirmative be disqualified as a juror in this case.

The affidavit attached was by Euna Lee who stated upon information and belief that the insurance company mentioned carried insurance for the defendant and would have to pay any judgment rendered against him; that the defendant's attorneys here are the regular attorneys for said insurance company, which is a mutual company wherein each policyholder is a stockholder, who would be liable for special assessments to meet losses, and may also receive bonuses, a remission of premiums, which makes each policyholder financially interested in the outcome of any case where the company may be made to respond to a judgment; that there are over 700 policyholders in Greer County, having over 1100 casualty policies in effect, and that unless permitted to question jurors as to being interested as policyholders, her rights will be seriously prejudiced. The court overruled the motion.

When the jury was selected and sworn the plaintiff offered to prove that the husband of one juror and five jurors were policyholders in the insurance company mentioned and interested in the outcome of this action, and moved that all of the six jurors named be stricken from the jury panel as disqualified under the law of Oklahoma. This motion was overruled and the trial was had. Ten of the jury returned a verdict for the defendant. Two of the jurors claimed by plaintiff to be stockholders or policyholders in the insurance company mentioned did not sign the verdict rendered. The juror, Nawasa Staton, was not alleged to be a policyholder but was the wife of a policyholder. The record does not disclose that the plaintiff exhausted her peremptory challenges.

The foregoing facts are recited here because deemed necessary to a full understanding of plaintiff's first proposition to the effect that the court violated her fundamental right to a trial by disinterested jurors by refusing to allow her to ask the jurors whether they were interested in or had policies of insurance with Oklahoma

Farm Bureau Mutual Insurance Company, and also in refusing plaintiff's offer to prove that members of the jury were so interested and by refusing to strike them from the jury panel.

■ This contention of the plaintiff presents a difficult question. It goes without saying that any party to an action tried to a jury is entitled to have his case tried by fair, impartial and disinterested jurors. Section 572, 12 O.S.1951, provides that petit jurors may be disqualified from serving for various reasons, one being, "* * * who has an interest in the cause; * * *"

In denying the plaintiff's motions for permission to interrogate the jurors in regard to their interest in the insurance company mentioned, the court announced that he would follow the rule announced in Safeway Cab Service Co. v. Minor, 180 Okl. 448, 70 P.2d 76, 77, where the question of interrogating prospective jurors was fully discussed by this Court. The general rule is there announced in the second paragraph of the syllabus as follows:

"The parties have a right to question prospective jurors on their business connections, among other things, in order to determine their fitness to sit in the particular case, and this includes the matter of insurance companies, when there is occasion to inquire thereon; but, in order to be in good faith in this respect, general preliminary questions should be asked which might elicit information making needless further questioning thereon."

The Court further said in the body of the opinion:

"This is becoming one of the most perplexing problems this court is called upon to consider. It is not necessary for us to repeat herein what we said in Beasley v. Bond, supra. The cases from the courts of the various states of the Union show how they have met the situation. The plaintiff has the right to elicit information concerning the business connections of prospective

jurors. Yet we have said, and still recognize, that a jury is likely to be swayed in finding against a defendant and in fixing the amount of the recovery by knowledge that the defendant is indemnified. Our problem is to say how far the plaintiff may go in eliciting information in good faith, and when the effect of such questioning is to convey expressly or by inference to the jury information that the defendant is indemnified, which is bad faith. However, since much of the determination of the propriety of such questions is left to the trial judge, and we seldom if ever have more than the printed record before us, the matter of determining good or bad faith is intensified.

\*    \*    \*    \*    \*    \*

"The attorneys should ask preliminary questions which might eliminate further questions. For instance, if a juror is asked if he owns stock in any corporation or is employed by one, and answers in the negative, further questions are unnecessary. If the juror answers in the affirmative, inquiry as to the type of a corporation is proper. If the answer discloses that it is a corporation other than one engaged in insurance business, further questions are unnecessary. If the answer discloses that it is an insurance corporation, then pertinent and specific questions are proper in order to establish the prospective jurors' partiality, etc. \*  \*  \*"

We have examined a number of cases which hold that it is lawful to inquire into the business connections of prospective jurors, so long as the attorney making the examination is acting in "good faith", that is, asking questions for the purpose of ascertaining the qualifications of the jurors, and not for the purpose of bringing out that the defendant is indemnified against loss by an insurance concern and in which jurors may hold a policy of insurance. In the case before us the plaintiff asked to question each juror as to whether he was interested in the insurance company alleged to carry insurance for the defendant, and whether the juror or members of his family held a policy in that particular insurance company. This effort would necessarily result in the jury being informed that a certain insurance company indemnified the defendant. The name of the particular company would of necessity be named if plaintiff had been granted the privilege of examining prospective jurors as requested, thus violating the well established rule that the jury should not be informed that the defendant was insured and that his insurer would bear any loss suffered in a verdict for the plaintiff. The "good faith" rule would be violated by such questions as plaintiff here sought to propound.

We note that the court permitted the attorney for the plaintiff to ask each prospective juror if he was interested in or a stockholder in any corporation, and that each answered in the negative. We also note that two of the jurors sought to be discharged because they were alleged to hold policies of insurance in the same company which insured the defendant, and did not sign the verdict rendered by the ten jurors who found for the defendant. Although it was held in Crabb v. Oklahoma Gas & Electric Co., 120 Okl. 182, 250 P. 926, that a stockholder of a corporation, which is the defendant in a personal injury action is not qualified to sit as a juror in the trial of such action, such ownership must be clearly established. Yet the trial court has a large discretion in determining the qualifications of prospective jurors. Indian Territory Illuminating Oil Co. v. Carter, 177 Okl. 1, 57 P.2d 864; Rice v. Emerson, 181 Okl. 51, 72 P.2d 498; Meier v. Edsall, 192 Okl. 529, 137 P.2d 926; Montgomery Ward & Co. v. Curtis, 199 Okl. 525, 188 P.2d 199. We find no decision holding that the trial judge must accept as true an affidavit based upon information and belief in preference to the sworn answer of the jurors on voir dire examination.

The U. S. Court of Appeals (10th Circuit) in Smedra v. Stanek, 187 F.2d 892, 894, said:

"Appellant also complains of the court's refusal to question the jurors on voir dire with respect to any interest they might have in the United States Fidelity and Guaranty Company. The scope of inquiry on voir dire is largely discretionary with the trial court. There is no showing in the record that any juror knew that the United States Fidelity and Guaranty Company was interested in the suit or defending it. Under these circumstances it cannot be said that the court's refusal to examine the jury with respect to this matter was such an abuse of discretion as to require a reversal."

The Supreme Court of Arizona in Dunipace v. Martin, 73 Ariz. 415, 242 P.2d 543, adopted the rule above announced in Safeway Cab Service Co. v. Minor, supra.

We conclude that there was no error in overruling plaintiff's motions as above discussed.

It is contended that the court erred in sustaining an objection to the testimony of Euna Lee that Samuel P. Lee was suffering pain when she saw him in the hospital and in sustaining a demurrer to the evidence pertaining to conscious pain and suffering. Her testimony was as follows:

"Q. What condition was he in then? A. He didn't know me.

"Q. Was he suffering pain? A. Yes."

In Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159, 160, the rule is announced in the second paragraph of the syllabus:

"It is a well-settled general rule that, where the bodily or mental feelings of a person are to be proved, the usual and natural expressions and exclamations of such person which are the spontaneous manifestations of pain, and naturally flow from the pain being suffered by him at the time, are compe-

tent and original evidence, which may be testified to by any party in whose presence they are uttered."

We think that Mrs. Lee could only testify as to what she saw as to his appearance and as to whatever he did or said, but her blank statement that he was suffering was not enough to support her allegation on that phase of damages.

We find no merit in the objection of plaintiff to the failure of the court to give her requested instructions nos. 1 and 2. A careful examination of the court's instructions convinces us that they fully and fairly advised the jury as to the law applicable to the facts before the court. Affirmed.

CORN, V. C. J., and DAVISON, JOHNSON, BLACKBIRD, JACKSON, and CARLILE, JJ., concur.

WILLIAMS, J., dissents.