**KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation,
Defendant in Error,**

v.

**George Z. NORWOOD, Defendant in Error.**

No. 38905.

Supreme Court of Oklahoma.

Oct. 10, 1961.

Rehearing Denied Nov. 7, 1961.

Application for Leave to File Second Petition for Rehearing Denied Dec. 19, 1961.

724

Looney, Watts, Looney & Nichols, Oklahoma City, William D. Mobley, Poteau, Kelly Brown, Muskogee, for plaintiff in error.

Alpheus Varner, Poteau, Ratner, Mattox & Ratner, Wichita, Kan., for defendant in error.

DAVISON, Justice.

This is an appeal by The Kansas City Southern Railway Company, a corporation (defendant below), from a judgment on jury verdict in favor of George Z. Norwood (plaintiff below) in an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover for personal injury sustained while working for defendant in interstate commerce. The parties will be referred to as they appeared in the lower court.

The record reflects that plaintiff (age 41), who was admittedly a brakeman employee of defendant for 16 years, alleged (inter alia) that defendant, while engaged in interstate commerce, negligently and in violation of the Federal Employers' Liability Act, failed to furnish a safe place to work or proper tools and fire fighting equipment to extinguish fires in defendant's railroad cars, or to inspect and properly lubricate

journal boxes of railroad cars under its control. Plaintiff also alleged that as a consequence thereof he suffered a severe injury to his heart whereby he was disabled from gainful employment, which would continue in the future, and had suffered and would continue to suffer pain in the future, all to his damage in the sum of $200,000.

Defendant answered by general denial, denial of negligence, and allegations charging plaintiff with failure to comply with the rules and instructions of defendant and that plaintiff was guilty of contributory negligence.

On the day of the injury, June 20, 1958, plaintiff was working as brakeman on train No. 88, which consisted of 114 cars and 5 engine units. The train of more than a mile in length left Heavener, Oklahoma, at about 2:00 p. m., with plaintiff riding in the fifth engine unit. As the train approached Sallisaw in mid-afternoon at a speed estimated at 40 miles per hour and about 1½ miles from the town or depot, the train crew (including plaintiff) learned of a "hot box" in a journal box on the 35th car, which was a flat car loaded with creosoted telegraph poles. Knowledge of the hot box was secured by observation of smoke from the box and by radio transmission from the depot. Plaintiff talked by radio with the personnel in the first engine unit and was informed that they knew of the hot box. A "hot box" on a train car is due to lack of lubricating oil in the waste, which is packed next to the journal or axle of the car wheel, causing heat to be generated.

The evidence disclosed that in the train organization the conductor was in charge of the train and the engineer in his absence and that plaintiff had no authority over the crew. The train was not stopped, but continued to a railroad track spur about 1.6 miles past the depot, where plaintiff uncoupled the car with the smoking box and it was set out on the spur.

Defendant's rule No. 208 for employees states:

"Whenever you set out a car with hot box pull all of the packing out of the box, making sure that the fire is completely extinguished and smothered with water, dirt, chat or gravel. Take the time necessary to do this in a manner that will leave no doubt."

After discovery of the hot box, and pursuant to said rule and his duties as brakeman, plaintiff and the other brakeman both testified that they searched for a tool known as a "packing hook," of which one or several were supposed to be on each engine unit. This tool is an iron rod with a hook on the end and used to hook out the waste from the journal box onto the ground, so that the burning waste could be extinguished. After a thorough search of all 5 engine units neither plaintiff nor his fellow brakeman could find a packing hook. The fact that none of the engine units were equipped with the packing hook is not disputed. He did find a bucket and a tool known as a "packing iron," which was not designed or useful to remove burning waste. It was admitted that hot boxes were a major problem and that they occurred more often in hot weather.

After the car was set out on the spur plaintiff opened the journal box and flames burst from the front and back and through a hole in the car floor to the creosoted poles. Dirt and gravel were not effective to extinguish the flames. Plaintiff searched for and found some shallow water in a low spot about 175 feet from the car and made 5 or more running round trips through waist and head high weeds and up and down the embankment of the road-bed, carrying water and mud, to extinguish the flames. It was dry and the weather was hot and sultry. On the last trip plaintiff suffered an attack of severe pain in his legs, arms and chest. An ambulance was immediately called and he was removed to a hospital where it was found he had suffered an acute heart attack diagnosed as myocardial infarction.

Plaintiff testified he was weak and unable to do anything requiring physical exertion and had constant pain and was under medical care. Plaintiff's doctor testified the physical exertion was considered a causable

factor of the infarction and that plaintiff was disabled.

The jury returned a verdict for $100,000 and defendant has appealed from judgment rendered on the verdict.

Defendant urges that the trial court erred in overruling its motion for continuance and motion to quash jury panel. It is defendant's position that the circumstances require joint consideration of these two propositions in order that this court may appreciate the cumulative detriment to defendant occasioned by the alleged errors of the lower court.

In this connection defendant complains the lower court erred in permitting plaintiff to amend his petition to allege and pray for larger amounts as damages for his alleged injuries. The original petition, as filed January 16, 1959, set forth plaintiff's damages as $50,000. On March 26, 1959, the court allowed plaintiff to amend to increase the allegation and prayer for damages to $100,000. On April 20, 1959, after alleged prior notice of more than a week to defendant, the plaintiff asked for and the court granted permission to increase the amount to $200,000. This was all done over the objection of defendant.

In St. Louis-San Francisco Railway Co. v. King, Okl., 278 P.2d 845, the action of a trial court allowing a similar amendment, after notice to the opposite party, was approved inasmuch as the defendant was not surprised or misled and because the amendment did not substantially change the claim of plaintiff. Such amendments may be allowed in furtherance of justice. 12 O.S.1951 § 317. See also Cimarron Valley Pipe Line Co. v. Holmes, 182 Okl. 450, 78 P.2d 403, 406.

Defendant also urges in support of its contention that it was prejudiced by the substantial reduction in the number of the jurors on the petit jury panel at the time this case came on for trial. It appears that the jury panel originally consisted of 75 jurors. By the time this matter was reached for trial the number was reduced

to 29 by reason of exemption or by being excused by the judge of the court. Defendant urges in effect that the remainder of the panel did not constitute the cross-section of citizens qualified for jury service which the law contemplated would act as jurors in the trial of actions. Defendant's contention generally questions the competency and qualifications of these jurors. No evidence was introduced or authority presented by defendant in support of this contention.

In Littrell v. State, 21 Okl.Cr. 466, 208 P. 1048, 1049, it is said:

"The right of the accused in the selection of a jury is one of exclusion of incompetent jurors, not one of inclusion of particular persons or classes of persons who are competent."

In Lee v. Swyden, Okl., 319 P.2d 1009, 1010, we stated:

"A large discretion is vested in the trial court in determining the competency and qualifications of jurors, and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent."

We will not disturb the trial court's action on this matter.

Defendant further contends that the list of qualified jurors, taken from the tax lists in the county assessor's office, was not prepared pursuant to the provisions of Title 38 O.S.1951 § 18 et seq.

Section 18 provides that between the tenth and twenty-fifth day of November of each year, the county treasurer, county assessor, sheriff, county clerk, and court clerk, or a deputy of each, shall meet in the office of the county clerk and prepare a list of qualified jurors from the tax lists for service for the ensuing year. Said officer (Sec. 19) shall write the names of all known qualified jurors upon separate cards with addresses, the names and addresses to be typed upon the cards under the supervision of the court clerk, and then deposited in a hollow wheel provided by the Board of County Commissioners, after they have re-

moved and destroyed all cards found therein, and the wheel then locked by two separate locks. It is from these cards (Secs. 20 and 21) that the general panel of jurors is drawn, prior to terms of court, for grand and petit jury service in the courts of record in the county.

It is not controverted that the named county officials did not strictly follow the provisions of the cited statutes. The record reflects that there was no formal meeting of the county officers or their respective deputies. The list (cards) was prepared under the supervision of the court clerk from the tax lists and took about 2 weeks to complete. The list was then delivered to the sheriff and he and the chairman of the Board of County Commissioners emptied the wheel and placed the list in the wheel and the court clerk and sheriff placed two locks on the container. There is evidence that the sheriff and county clerk were occasionally in the court clerk's office while the list was being typed and some evidence that the county clerk inspected the wheel when the list was deposited therein. There is no evidence of concealment and none is urged by defendant.

Section 29 of Title 38 provides that substantial compliance with the statutory provisions is sufficient to prevent the setting aside of any verdict by a jury chosen thereunder, unless the irregularity resulted in depriving a party litigant of some substantial right.

■ To entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the illegality or wrong which is the basis of such challenge is such as to have caused the defendant to suffer material prejudice. Taylor v. State, 95 Okl.Cr. 98, 240 P.2d 803; Houston v. State, 63 Okl.Cr. 49, 72 P.2d 526.

The panel of jurors drawn from the jury wheel was available to defendant for examination. No showing was made that members of the panel were not qualified to serve as jurors or were incompetent to sit as jurors in the trial of the case. In the final analysis of defendant's contention the main fault urged is that the jury, upon consideration of the evidence, rendered a verdict for plaintiff in a very substantial sum. Defendant presents no substantial facts or argument that the procedure followed in the preparation of the jury list caused or contributed to an erroneous verdict or deprived the defendant of some substantial right.

■ Our conclusion on this aspect of this appeal should not be construed as approving irregularities in the preparation of the list of jurors by the county officials charged with that statutory duty. The procedure is set forth in clear language by the statutes. Any departure from this procedure is condemned and is being tolerated in this instance because of the lack of proof of prejudice.

Defendant also contends the trial court erred in overruling its demurrer to plaintiff's evidence and request for directed verdict. Defendant argues under this proposition that plaintiff disobeyed specific rules of defendant and was guilty of primary negligence and further that plaintiff chose his own method of putting out the fire. Defendant contends that either of these situations prevent recovery by plaintiff.

■ This proposition and the contentions must necessarily be construed in connection with the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Sec. 51 provides for liability of the railroad to its employees for injuries resulting in whole or in part from negligence of its officers, agents or employees, "or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, * * *, or other equipment." Sec. 53 states contributory negligence shall not bar a recovery, "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Sec. 54, as amended in 1939, eliminates assumption of risk by the injured employee.

■ Defendant's rules required the train crew to be on the lookout and observe any

defects in the train, which included hot boxes, and if moving when the defect was discovered, the train must be stopped. Special Instruction No. 1 (above quoted) stated that when a car was set out with a hot box, all packing was to be pulled out and the fire extinguished with water, dirt, chat or gravel.

Defendant contends plaintiff violated a primary duty when he failed to stop the train on learning of the hot box. Both the conductor and engineer were superior to plaintiff, and the engineer had simultaneous, if not prior, knowledge of the hot box. Under the rule there appeared to be an equal duty on the engineer to stop the train. Certainly the engineer was the one to apply the brakes, unless plaintiff resorted to an emergency stop. By doing so the plaintiff would have overruled the decision of his superior. Under these circumstances and in the absence of any apparent immediate emergency it seems doubtful that a brakeman would take such drastic action. Nor do we find in defendant's evidence a construction of the rules requiring plaintiff, under the circumstances, to effect an emergency stop, but rather that the train should have stopped at the depot or a place where water was more likely available. Another circumstance is the remoteness of plaintiff's injury from the alleged violation of the primary duty to stop. It is difficult to conclude that the failure to stop was the sole proximate cause of plaintiff's injury.

Since the 1939 amendment of Sec. 54 (45 U.S.C.A.) removing assumption of risk as a defense the court decisions on violation of a "primary duty" are generally to the effect that the employee may be denied recovery if such violation constituted the sole proximate cause of his injuries. See Annotation 59 A.L.R.2d 580, 643, et seq. In this case plaintiff's acts at most were contributory negligence to be considered by the jury as diminishing damages.

Defendant's contention that plaintiff's choice of an unsafe method of extinguishing the fire precludes his recovery is without merit. The evidence is clear that defendant failed to furnish a packing hook, which was a tool specially designed to remove burning packing waste and which was supposed to be placed by defendant on the engine units. If defendant had furnished or made the tool available, then plaintiff could have removed the waste and put out the fire with the materials at hand. Under the evidence it was plaintiff's duty to extinguish the fire and water was one of the materials named to be used for this purpose. While the plaintiff was under a strenuous physical exertion in securing the water and extinguishing the fire, he suffered the acute heart attack. The jury could reasonably conclude from the evidence that defendant was negligent in not furnishing the packing hook and that such failure was the proximate cause of plaintiff's injury.

Any other conclusion would charge plaintiff with assumption of risk under another name, Schirra v. Delaware L. & W. R. Co., D.C.M.D.Pa., 103 F.Supp. 812, citing Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; or exclude the issue of defendant's duty to furnish sufficient appliances and equipment, Missouri-Kansas-Texas R. Co. v. Jones, Okl., 354 P.2d 415, 421.

In Missouri-Kansas-Texas R. Co. v. Brown, Okl., 348 P.2d 1069, 1071, we stated:

"And, unless there is a complete absence of probative facts, Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, the question of whether defendant was guilty of negligence in failing to furnish a reasonably safe place to work or safe equipment to work with is for the jury to determine from all the facts and circumstances and reasonable inferences to be drawn from said facts. Bailey v. Central Vermont Ry., supra [319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444]. Once there is a reasonable basis for concluding that there was negligence which in whole or in part caused the injury, Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, it is irrelevant that fair-minded men might reach different

conclusions for (sic) those of the jury. Lavender v. Kurn, supra, and Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572."

Defendant also contends that the court communicated with the jury in the absence of counsel and that a new trial should have been granted.

The testimony of the two bailiffs and a member of the jury in the aggregate was substantially that after the jury had retired to consider a verdict the foreman called the bailiffs to the door of the jury room and handed them the two forms of verdict furnished with the instructions, one for defendant and one for plaintiff, asking "which was which" and stating "we don't know which to sign," and requested that inquiry be made of the judge. One of the bailiffs took the forms to the judge and he "told me where to have them sign." The bailiff then returned to the jury room door and the verdict forms were returned to the foreman with the statement that the judge said "sign this one here and this one there." The recollection of the trial judge is that the bailiff came to his chambers and the conversation was as follows:

"He said, 'Which is the Plaintiff's and which is the Defendant's?' I thought the question was information that he wanted as the bailiff, being a new man around the court. I said, 'the name appearing at the top of the verdict is the plaintiff, and the one under the versus is the defendant, and is so designated on the forms of the verdict.' That was my answer to him."

From the briefs and record it appears neither counsel was present.

Title 12 O.S.1951 § 582, provides that where, after the jury has retired, it desires to be informed as to the testimony or the law, that the jury shall be conducted to the court and proceedings held in the presence of, or after notice to, the parties or their counsel.

In Sowers v. May, Okl., 338 P.2d 160, 162, we said with reference to such statute:

"It does not necessarily follow in every instance, if the statute is not strictly complied with that such is reversible error as we are enjoined by statute to disregard an error or defect in the proceedings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect. Title 12 O.S.1951 § 78. See Wilson v. Oklahoma Ry. Co., 207 Okl. 204, 248 P.2d 1014."

■ The act of the lower court was technically an error and one to be carefully guarded against, but after careful examination of the entire record, it does not appear that it resulted in a miscarriage of justice or substantially violated the defendant's constitutional or statutory rights. At most the lower court's statement, as relayed to the jury, was a reiteration of what appeared in the instructions and in the two forms of verdict furnished to them for use at the conclusion of their deliberations, and was therefore harmless.

Defendant further contends that the verdict is excessive in view of the pre-existing condition of plaintiff and the uncertainty as to the extent of the injury.

The medical evidence of both parties is that plaintiff had a pre-existing condition of hardening of the arteries and that in fact most persons aged 41 years had this condition; that the strenuous physical exertion of plaintiff at the time of putting out the fire caused or brought on his heart attack; and that plaintiff was presently disabled by the attack. Trial of this action was commenced more than 10 months after plaintiff's heart attack. Plaintiff's medical expert testified that plaintiff's heart was severely and extensively damaged; that plaintiff should not resume work as a brakeman or engage in any strenuous activity or anything particularly mentally or physically fatiguing and that for the remainder of his life plaintiff was not going to do much of anything, other than a

**730**

sedentary existence. Defendant's doctor testified plaintiff should not engage in heavy manual labor and that another six months should elapse before definite conclusions could be reached concerning future work.

There is no evidence that plaintiff was handicapped by any physical condition in the performance of his duties prior to the heart attack and in fact the record discloses his work was satisfactory. Admitting the prior condition of hardening of the arteries, still the medical testimony sufficiently established the accidental heart injury as the cause of the disability. See Kansas City Southern Ry. Co. v. Haynes, Okl., 320 P.2d 404, 411.

 It is not necessary that the evidence adduced to prove an injury is permanent be so positive and conclusive as to establish that fact beyond any shadow of doubt before it can be submitted to a jury. It is sufficient if it reasonably tends to establish such fact. Oklahoma Ry. Co. v. Wilson, 204 Okl. 90, 227 P.2d 392.

 The evidence is that plaintiff earned $7124.57 in the year 1957 and from January 1, 1958, to June 20, 1958, had earned $3755.19. His life expectancy at the time of his injury was 31 years. Considering that plaintiff sued for loss of earnings and pain and suffering the verdict is within the limits of detriment presented to the jury by the evidence. A judgment is excessive only where it is apparent that it was rendered under the influence of bias, passion or prejudice without due deliberation and where it is not supported by proof of detriment. We are unable to say that the verdict and judgment can be said to be excessive and to have been the result of bias, passion or prejudice. Heavy Haulers, Inc. v. Jones, Okl., 304 P.2d 292; St. Louis-San Francisco Ry. Co. v. King, Okl., 278 P.2d 845, supra.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.