**SINCLAIR OIL & GAS CO. et al. v. CRANE et al.**

No. 23476.   Sept. 25, 1935.

Rehearing Denied Dec. 3, 1935.

W. M. Bowles, J. C. Denton, R. H. Wills, J. H. Crocker, J. P. Greve, I. L. Lockewitz, Edw. H. Chandler, Robert L. Imler, and Joe T. Dickerson, for plaintiffs in error.

Cress & Tebbe, for defendants in error.

PER CURIAM.   J. W. Crane and Ida Crane instituted this action in the district court of Noble county against Sinclair Oil & Gas Company et al., to recover damages for permanent injury to their land by reason of defendants permitting oil and salt water to escape from their leases. The parties will be referred to as they appeared in the trial court.

The facts are the plaintiffs owned and operated the northwest quarter of section 2, township 21 north, range 2 east in Noble county, Okla., as a farm home, which was situated near the Black Bear river, and said companies operated oil and gas leases that drained into said river upstream from the plaintiffs' farm. The plaintiffs' farm was inundated with overflow and backwater from said river several times during 1928 and

1929, and in 1929 when said river was at flood stage a pipe line of the Shell Company broke and released quantities of gasoline into said river upstream from plaintiffs' farm, and oil, salt water and injurious substances were deposited on plaintiffs' farm. The plaintiffs claimed damages for permanent injury to their land. The trial court rendered judgment in favor of plaintiffs and against said companies pursuant to a verdict of the jury, and said companies have perfected their appeal.

Under the first and second propositions the defendants contend that the trial court erred in overruling their challenges for cause to certain jurors. The juror, Oscar Delozier, upon his voir dire examination stated in substance that he was familiar with Black Bear river, then stated in answer to questions propounded by the defendants, as follows:

"Q. And you know at this time or have an opinion as to the effect of this water on live stock and on soil and vegetation? A. Yes, sir. Q. Suppose it does develop that it is in the bottom and that they are claiming damage on account of overflow of water from Black Bear river, you would have an opinion about the result, wouldn't you? A. Yes, sir."

Thereupon the defendants challenged said juror for cause. Then said juror stated in answer to questions propounded by the plaintiffs, as follows:

"Q. Mr. Delozier, do you know this land, which is the northwest of 2, 21, range 2 east, I. M. in this county? A. I don't know exactly where it is; no, sir. I have been up and down the Bear. Q. All you know about the water in the Black Bear or any other water, is what is common knowledge—the effect of oil and salt water on vegetation? A. Well, that is practically all. Q. That is all you know about such things. You don't know about the effect of this water at any particular place, do you, on Black Bear? A. No, I don't know that I do. Q. You don't know what its effect is at any particular time—have no opinion on it? A. No. sir. Q. And you don't know whether this land in question has ever been overflowed? A. No; I don't. Q. What you mean by your answer to Judge Bowle's question is that if salt water and crude oil go over land, you have an opinion as to what it might do to the vegetation? A. Yes, sir. Q. And that is all you mean by having an opinion? A. Yes, sir."

And upon further examination by the defendants, the juror stated:

"Q. And you would go into the jury box knowing what the effect of the water in the Black Bear river—the overflow water and the water in the stream—what effect it has on vegetation and soil and things of that kind during the time between 1926 and '27 and the present time? A. Yes, sir."

And upon examination by the court, the juror stated:

"Q. Mr. Juror, do you think that, taking all your knowledge of the Black Bear and the oil field into consideration, that you can sit as a juror in this case and render a fair and impartial verdict upon the evidence and the law, unbiased by anything that has happened that you know of? A. I believe I could."

The trial court overruled the challenge and the defendants duly excepted. The defendants exhausted their three peremptory challenges, and upon the trial the juror Delozier remained.

It is especially noticed that the juror Delozier did not state that he had any knowledge of the defendants' leases or their drainage, or that they drained into the Black Bear, or that the defendants polluted said river, and stated that he did not have any knowledge of the plaintiffs' farm, or that it ever overflowed, or of the effect of water from said river at any particular place at any particular time, and that he believed he could render a fair and impartial verdict upon the law and the evidence. The defendants contend that this juror had knowledge of the principal issues to be tried, to wit:

"(1) Whether or not the defendants polluted Black Bear creek; and

"(2) What effect did such pollution have on land that was overflowed by the waters from said creek?"

There is nothing in the record to show that said juror had any knowledge that the defendants polluted said river. The record is silent as to this. And in the absence of a showing to the contrary it is presumed that said juror did not have any knowledge that the defendants polluted said river. The rule is stated in 35 C. J. par. 447, as follows:

"A person selected and returned as a juror is presumed to be qualified and competent to serve, and the burden is upon the challenging party to show the contrary, who must make out at least a prima facie case. * * *"

The juror Delozier stated that he had an opinion as to the effect of overflow water from the Black Bear river on soil and vegetation. It is not shown that he had an opin-

ion as to any other matter involved in the action. This is not tantamount to an opinion as to who should prevail in the action, and is not tantamount to an opinion of a juror in a criminal case as to the guilt of a defendant charged with a crime. Therefore, some of the authorities cited by the defendants in their briefs are not applicable. Section 354, O. S. 1931, sets out the grounds for challenging jurors, and provides that the validity of challenges shall be tried and determined by the court.

"* * * But the true inquiry in all cases is whether the juror will act with entire impartiality, in deciding which, except in those cases where the law conclusively presumes bias, much must be left to the discretion of the court, which, unless clearly abused, will not be interfered with." 35 C. J. par. 348.

"Ordinarily, where a juror testified that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an 'impartial juror', under our Constitution and the statutes of this state." International News Service v. News Pub. Co. of Enid, 118 Okla. 113, 247 P. 87.

The trial court tried the question of the qualifications of this juror and determined that he was qualified, and we cannot say that he abused his discretion in so doing.

The defendants then contend that the trial court erred in overruling their challenge for cause of jurors J. W. Mounts, Albert Passow, Orville Williams, Roy Allen, and Earl Williams. The plaintiffs set out in their brief that the juror J. W. Mounts did not concur in the verdict, and if he had an opinion, it was in favor of the defendants of which they cannot complain. Said juror, J. W. Mounts, did not concur in the verdict for the good reason he was excused by the defendants upon their first peremptory challenge and did not sit as a member of the jury in the trial of this action. All of said jurors stated on their voir dire examination that they were members of the jury in the case of Olive M. Boyer, Adm'x, et al. v. Sinclair Oil & Gas Co., Roxana Petroleum Co., Mid-Continent Petroleum Corporation, et al., which was tried in the district court of Noble county, about a week prior to the date of this trial, and was an action for damages for injury to land caused by overflow water from the Black Bear river during 1926 and 1927, which resulted in a verdict for the plaintiff. The jurors further stated in substance that they would have an opinion as to the effect of overflow water from the Black Bear river on soil and vegetation, and that they would disregard their opinion,

and the evidence they heard in the Boyer Case, and try this case impartially according to the evidence. And upon further inquiry it developed that each of said jurors was without any bias or prejudice. The period of time involved in the Boyer Case was 1926 and 1927. The period of time involved in this case is from September 18, 1927, to September 18, 1929. The source of information upon which said jurors based their opinion was the evidence they heard in the Boyer Case, which involved a period of time prior to that involved in this case. Whether or not said jurors were qualified was a matter to be tried and determined by the trial court. This the trial court did and determined each of said named parties to be qualified jurors. And unless it is clear that said jurors, or some of them, were disqualified, the decision of the trial court will not be disturbed. Under the authorities above set out we cannot say that the ruling of the trial court was erroneous.

Under the third proposition the defendants contend that the trial court committed reversible error in commenting upon the weight and credibility of certain witnesses for the plaintiff in the presence of the jury. One of the comments made during the cross-examination of Mr. Lambert, a witness for the plaintiff, is as follows:

"By the Court: About a certain time—he fixed the value at a certain time, but as to the exact time when the flood came down, this witness didn't know, and I think he is truthful in saying he don't know."

The other comment was made during the cross-examination of Will Voss, a witness for the plaintiff, as follows:

"Q. The whole farm is worthless. (No answer.) Did you see any pecan trees down there? By Mr. Lockewitz: Read the question. A. That stand of alfalfa where I examined it is— By Mr. Lockewitz: We move that he be required to answer the question. By the Court: He is answering the best he knows how. He is doing the best he can."

This court has held that the trial court should refrain from any remark or demeanor which would have a tendency to indicate the opinion of the court as to the merits of the case, or the truth or falsity of the testimony of witnesses. Settle v. Crawford et al., 155 Okla. 291, 9 P. (2d) 38. The comment that the court thinks the witness is telling the truth in saying he does not know could not, under the circumstances in this case, be prejudicial to any rights of the defendants. When the witness stated he did not know, he did not thereby aid the plaintiffs. And

under the circumstances in this case, the second comment could not be considered prejudicial to the rights of the defendants, as the testimony given by the witness at the time the comment was made could not aid either side and the comment did not indicate the opinion of the court as to the merits of the case. We conclude that said comments do not constitute reversible error.

Under the fourth proposition the defendants contend that the plaintiffs' attorney was guilty of misconduct in his closing argument which prevented them from having a fair trial. The record relative thereto is as follows:

"By Mr. Lockewitz: I want you to repeat just what you stated to the jury. By Mr. Cress: I will make an effort to do it as near as I can. By Mr. Lockewitz: That is all we want. By Mr. Cress: Gentlemen of the jury, as you have observed from the conduct of this trial, Jack Crane will probably have to meet this case in the Supreme Court. And, I now desire to withdraw that statement from this jury."

To which the defendants objected and moved the court to declare a mistrial. The objection and request was overruled and excepted to by the defendants. Then the trial court admonished the jury as follows:

"By the Court: Gentlemen of the jury, you are instructed that you will base your verdict on the instructions given you by the court and on the evidence that you have heard from the witnesses and you will disregard the objectionable remarks of counsel and give it no weight in arriving at your verdict. Proceed."

Said statement by plaintiffs' attorney was improper and objectionable. Apparently the sole purpose thereof was to inspire passion and prejudice in the minds of the jury, and we condemn such practice. The attorney for the plaintiff immediately withdrew said statement from the jury and the trial court admonished the jury not to consider the same, and the proper parties did what they could to restore the proceedings to a status quo. And in view of the entire record we do not believe this was prejudicial to the rights of the defendants.

Under the fifth proposition the defendants contend in their supplemental brief that the plaintiffs did not properly prove the amount of damages to their land, and that the plaintiffs established, over the objections of the defendants, as their measure of damages, the difference in value of their land as of the fall of 1927 and the date their petition was filed, to wit, September 18, 1929. This same question was before this court in the case of Comar Oil Co. v. Blagden et al., 169 Okla. 78, 35 P. (2d) 954, wherein this court held:

"Where one of the issues to be determined is the market value of land immediately after an injury thereto, the fact that the questions relating thereto are objectionable, in that the form of the questions alone might be construed as relating to the value of said land as of the time of the trial, yet the cause will not be reversed if from an examination of the testimony as a whole it appears that the witnesses were testifying as to the value of the land after such injury and not testifying as to the value of said land as of the time of the trial."

Nearly all of the questions propounded with reference to the value of the land prior to the injury inquired about its value prior to the flooding, the injury, the pollution or the damage. And nearly all of the questions propounded with reference to the value of said land after the injury inquired with reference to its value after the flooding, the injury, the pollution or the damage, and many of the questions with reference to the injury after the flooding were joined with the additional inquiry, "and/or on September 18, 1929, at the time this action was filed." It is apparent that the witnesses were testifying as to the value of the land after the injury, and we are of the opinion that the plaintiffs properly established their measure of damages.

A careful examination of the entire record discloses that the defendants had a fair trial, and there being no prejudicial errors in the record, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Glenn H. Chappel and B. A. Lewis, in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Chappel and approved by Mr. Lewis, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.