Teddy June PARRISH, Catherine Haggard, Sandra Sue Crahan and Thelma Parrish, Appellants,

v.

Dr. Charles LILLY, Appellee.

No. 75964.

Supreme Court of Oklahoma.

July 6, 1993.

Rehearing Denied Oct. 25, 1994.

Murray E. Abowitz & Janet S. Legg, Abowitz & Welch, Oklahoma City, for appellants.

Galen L. Brittingham and Michael P. Atkinson, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for appellee.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Teddy June Parrish, Catherine Parrish Haggard, Sandra Sue Crahan and Thelma Parrish, appellants, are the surviving children and wife of June Parrish, who died of lung cancer. Appellants brought this medical malpractice action against appellee, Dr. Charles Lilly, alleging that he was negligent in not timely diagnosing and treating Mr. Parrish's lung cancer.

The trial in this action commenced on June 18, 1990, in Tulsa County District Court Case No. CJ–85–7480, before the Honorable David L. Peterson, District Judge. After a jury panel was seated, the court and both parties conducted voir dire. One line of questioning posed to the jury panel involved the jurors' reactions to probable testimony that Mr. Parrish had smoked a pack of cigarettes a day for over forty years. Thereafter, a panel of twelve jurors and one alternate were selected, impaneled and sworn.

Prior to opening statements, the court delivered preliminary instructions to the jury. When the court asked if there were any questions, one juror said he had been thinking about the voir dire questions and indicated he had already formed an opinion prejudicial to the case. The juror stated:

> I'm not sure I know exactly how to phrase this, but in the area of smoking. It strikes me with what we've learned over the last 20 years in the area of smoking, that, if a person were smoking a pack a day, a pack a day for the last 20 years—

The trial judge interrupted the juror and asked him whether he had any questions *concerning the preliminary instructions.* The juror stated that he had none and the court completed its preliminary instructions.

During the ensuing recess, plaintiffs' counsel moved the court to hear further comments from the juror, suggesting that the juror was having second thoughts about his impartiality. The court denied the motion. Shortly thereafter, the court received the following note from the juror:

> To Honorable Judge Peterson,
>
> I am of the opinion that a person who smokes a pack of cigarettes each day runs a higher risk of sickness than one who does not, & that if this is the case, I feel that a portion of evidence may have already been presented to alter a totally fair opinion on my part. I leave the decision as to whether I am still a valid juror in your hands. Thank you. . . .

At this point, the court summoned the juror to the judge's chambers and questioned him before counsel for both parties. In what appellants characterize as "intimidation," the judge expressed amazement over the note because, as he reminded the juror, the panel had been asked several times whether there was any reason why they could not serve as jurors. After pointing out that the jury had already been sworn, the judge reread one of

the preliminary instructions which explained that the statements, remarks and arguments of counsel do not constitute evidence. The juror then attempted to express his concerns about his impartiality as a juror; concerns which were apparently triggered by opening statements regarding Parrish's prolonged smoking. During the discussion which followed, the judge twice more reread the instruction regarding attorneys' statements and pointedly reiterated that no evidence had been introduced. The discussion ended when the juror responded that he could fairly and impartially judge the evidence after it was introduced.

After the juror was excused from chambers, appellants moved the court to strike the juror and replace him with the alternate. Defense counsel resisted the motion because he did not particularly like the alternate juror, but suggested that a new jury be impaneled. Appellants objected to impaneling a new jury on the grounds that their expert witnesses were scheduled to appear on that particular day only. They also opposed the court's proposal that the juror be stricken and only eleven jurors be used. After discussions were had concerning the estimated length of trial and the availability of a new jury panel, the court decided to continue with the twelve impaneled jurors and one alternate.

The trial was conducted and the jury returned a unanimous verdict in favor of the doctor. Appellants appealed. The temporary panel of the Court of Appeals affirmed, holding that the trial court did not abuse its discretion in refusing to strike the questioned juror. We granted appellants' Petition for Writ of Certiorari on January 11, 1993.

## ISSUE

The issue presented in this case is whether the trial court abused its discretion in refusing to strike the juror at issue. We hold that it did.

1. *See also Hawkins v. State,* 717 P.2d 1156, 1158 (Okl.Crim.App.1986); *Allison v. State,* 675 P.2d

## DISCUSSION

The Oklahoma Constitution provides that the "right of trial by jury shall be and remain inviolate. . . ." Okla. Const. art. 2, § 19. It is generally recognized that "jurors must be impartial, and bias or prejudice in a case disqualifies one as a juror thereon and provides cause for a challenge." *Burke v. McKenzie,* 313 P.2d 1090, 1093 (Okl.1957). *See also* 12 O.S.1981 § 572. Although determining the validity of a challenge for cause is left largely to the discretion of the trial court, *Burke* at 1093, this Court will reverse a ruling on such matter where abuse of that discretion is shown. *McAlester Urban Renewal Authority v. Lorince,* 519 P.2d 1346, 1348 (Okl.1973).

The Oklahoma Court of Criminal Appeals has held that whenever the fairness and impartiality of a juror is questioned, the trial court must be clearly satisfied that such juror is fair and impartial. *Scrivener v. State,* 63 Okl.Crim. 418, 75 P.2d 1154, 1156–57 (App.1938). The court has also held that it is the duty of the trial court to resolve all doubts regarding juror impartiality in favor of the defendant. *Id.*[1] While recognizing that criminal trial procedure is not binding on this Court, we have cited *Scrivener* with approval, noting that "both the reasoning and the rule based thereon [were] persuasive." *Burke,* 313 P.2d at 1093–94.

In determining whether a trial court abused its discretion in failing to disqualify a juror who expressed bias, the *Burke* Court held:

> Too much precaution cannot be observed to guard against improper influence and preserve the purity of jury trials. Strictness is necessary to give due confidence to the parties in the results of their cases. Due regard to careful protection of the rights of the litigants, which should actuate trial courts, requires that they scrupulously confine the proceedings wherein these rights are to be settled, within recognized boundaries providing for determination by impartial trials.

142, 153 (Okl.Crim.App.1983).

*Burke,* 313 P.2d at 1096. We find equally compelling a similar sentiment expressed in *State v. Smith,* 320 P.2d 719, 726 (Okl.Crim. App.1958):

> [T]rial courts [should] exercise meticulous care in the matter of inquiry into jurors' qualifications on either grand or petit juries. To do otherwise invites injustice, results in needless expense, waste of time, and sometimes a total failure of justice.... There are too many citizens free from the taint of bias and prejudice for our courts to indulge in speculation on such matters and gamble with justice.

*See also Jackson v. General Finance Corp.,* 208 Okl. 44, 253 P.2d 166, 168 (1953), where we stated, "Courts have a duty to enforce strict observance of the constitutional and statutory provisions designed to preserve inviolate, right to, and purity of jury trial."

In the present case, the questioned juror suggested in open court before the other jurors and explicitly expressed in a note to the court that he had formed a preconceived opinion which was prejudicial to the case. The juror's comments also indicated that, even before any evidence was presented, he had lost sight of the real issue in this case and focused his attention on a non-issue. The issue was not whether Mr. Parrish's prolonged smoking had caused his cancer, but whether the doctor was negligent in not detecting the cancer sooner.

 It is apparent from the record that the juror at issue possessed an opinion which adversely reflected on his ability to render an unbiased verdict. Indeed, he repeatedly attempted to inform the court that he had reservations about his impartiality. It is also apparent that not only appellants, but both the court and opposing party had serious concerns about the questioned juror's impartiality. Those concerns were manifested when the doctor suggested, and the court considered, impaneling a new jury, and when the court suggested striking the juror and conducting the trial with only eleven jurors. The record demonstrates that the trial judge was not clearly satisfied the juror could render a fair and impartial verdict. Such doubt should have been resolved in appellants' favor. A party should not be "compelled to produce proof to change a preconceived opinion or prejudice which may control the action of the juror." *Burke,* 313 P.2d at 1095. For these reasons, we hold that the trial court abused its discretion in refusing to dismiss the juror for cause.[2]

 Dr. Lilly argues that since the jury returned a unanimous verdict when only nine concurring jurors were needed to render a verdict, any error occasioned by allowing the challenged juror to remain on the panel was harmless. We disagree. Because this civil action involved more than $10,000.00, appellants were constitutionally guaranteed a trial by a twelve member jury. Okla. Const. art. 2, § 19. *See also* 12 O.S.1981 § 556.1(c). Implicit in this constitutional assurance is the right to a jury composed of *twelve impartial* jurors.[3]

---

**2.** We acknowledge that qualified jurors need not be totally ignorant of the facts and issues involved in a case, and that *ordinarily* a juror is considered impartial if he testifies that he can render an impartial verdict upon the evidence. *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Sinclair Oil & Gas Co. v. Crane,* 51 P.2d 711, 713 (Okl.1935). However, a juror's assurances that he is equal to this task are not dispositive of the rights of the objecting party. *Murphy,* 421 U.S. at 800, 95 S.Ct. at 2036. Although the juror at issue said he could render a fair and impartial verdict, he did so only after the court expressed dismay over his comments and lectured him in chambers. More importantly, the juror's comments raised a serious question regarding his fitness to impartially serve and the court should have resolved such doubt in favor of appellants.

**3.** *See Embry v. Weeks,* 421 P.2d 232, 234 (Okl. 1966) (a party is entitled to have his or her case tried by a fair and impartial jury composed of competent, disinterested jurors); *Wiggins v. Sterne,* 293 P.2d 603, 606 (Okl.1955) (selection of a new panel is required where any portion of jury is disqualified); *State v. Smith,* 320 P.2d at 724 (an accused is entitled to not one, nor eleven, but twelve unbiased and qualified jurors); *Tapia v. Barker,* 160 Cal.App.3d 761, 206 Cal. Rptr. 803, 805 (1984) (litigant in a jury trial has a constitutional right to a fair trial by, twelve impartial jurors); *Wright v. Bernstein,* 23 N.J. 284, 129 A.2d 19, 25 (1957) (parties are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influences); *State v. McFall,* 67 N.M. 260, 354 P.2d 547, 549 (1960) (if any juror is biased, the jury upon which he serves is thereby deprived of its quality of impartiality); *Shaver v. State,* 162

Contrary to the views of the doctor and the dissent, the number of concurring jurors required to render a verdict is not germane to this proceeding. As the Supreme Court of Missouri held:

> The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, "the right to a fair and impartial jury." ... Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified [individuals]. *Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified [individuals].*

*Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 463, 136 S.W.2d 695, 698 (1939) (emphasis added). *Accord Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo.1965); *Moore v. Middlewest Freightways, Inc.*, 266 S.W.2d 578, 586 (Mo.1954); *McNally v. Walkowski*, 85 Nev. 696, 462 P.2d 1016, 1018 (1969). We find the above rule of law applies to this case. Each and every person who sits on a jury, regardless of the number of jurors required to render a verdict, must satisfy the constitutional and statutory requirements of impartiality. Subjecting a party to anything less than twelve impartial jurors, where twelve jurors are guaranteed, will not survive judicial scrutiny. Furthermore, this Court will not engage in speculation regarding the influence a biased juror may or may not have had upon the other members of a jury. In the present case, we have no way of determining what impact the questioned juror, his preconceived opinion or his preoccupation with the non-issue of causation had upon the outcome of this case.

## CONCLUSION

We hold that the trial court abused its discretion in failing to strike the questioned juror, where the juror repeatedly attempted to express that he had formed a preconceived opinion that was prejudicial to the case, and where the record reveals that the trial judge himself was not clearly satisfied the juror

Tex.Crim. 15, 280 S.W.2d 740, 742 (1955) (the presence of one partial juror on a jury destroys

could be fair and impartial. Such error cannot be considered harmless because appellants were guaranteed a jury of twelve impartial jurors and this Court cannot speculate what effect the biased juror had upon the trial.

Certiorari previously granted. The opinion of the Court of Appeals is VACATED. The judgment of the district court is REVERSED, and this cause is REMANDED for a new trial.

OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

I respectfully dissent. Plaintiffs brought their action for medical malpractice against the doctor for his alleged negligence in failing to properly diagnose lung cancer in his patient which ultimately led to the patient's death. The lawsuit was not predicated on the theory that smoking could lead to lung cancer or have an adverse effect on a person's health.

The colloquy between the juror in question, the trial judge, and the attorneys reveals only that the juror did have an opinion that a person who smokes a pack of cigarettes a day runs a higher risk of sickness than one who does not. Causation of the cancer in the patient is not an issue in the case; only the failure of the doctor to timely and properly diagnose the cancer is at issue. The juror expressed absolutely no opinion as to any matter which would touch upon the alleged negligence of the doctor. I do not believe the trial judge abused his discretion in refusing to strike the juror. A large discretion is vested in the trial court in determining the competency and qualifications of jurors and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent. *Agee v. Gant*, 412 P.2d 155, 162 (Okl.1966): *Kansas City Southern Railway Company v. Norwood*, 367 P.2d 722, 726 (Okl.1961).

the impartiality of the body and renders it partial).

Great reliance is placed upon criminal law by the majority in reaching its conclusion the trial judge erred by refusing to strike the juror in question from the trial panel. While the civil courts of this state often look to the Court of Criminal Appeals for guidance in answering questions involving criminal law, I submit the cases from the Criminal Court of Appeals are of little assistance in this case.

Oklahoma Const., Art. II, § 19, provides that in all criminal cases where imprisonment for more than six (6) months is authorized, the verdict must be unanimous, that is agreed to by its entire number; while in civil cases, three-fourths (¾) of the entire number, nine, shall have power to render a verdict. The verdict in this case was *unanimous*. That is, there were eleven jurors whose qualifications to try this cause were unchallenged who returned a verdict for the defendant; two jurors more than the constitution requires for a lawful verdict.

The majority states that the number of jurors required to render a verdict is not germane to this proceeding, relying upon cases from Missouri and Nevada. Analysis of those cases however, shows that the Court's reliance is misplaced. In *Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 136 S.W.2d 695 (1939), a Missouri trial judge, on his own motion, granted plaintiff a new trial because one of the jurors who sat in the case and was one of eleven jurors who signed the verdict, was an imposter who had practiced fraud upon the court to serve on the jury. The imposter juror, Herbert Daniel, who had not been served to appear on the venire, appeared using the name of W.M. Bennett who had been summoned, and continued to impersonate Bennett throughout the trial. The Missouri Supreme Court affirmed the action of the trial court in granting new trial because a litigant was entitled to a jury of "twelve *qualified* men". (Emphasis supplied) In case at bar, there is no contention the juror was not qualified, only that he had an opinion about smoking, and its potential hazards.

In *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499 (Mo.1965), the Supreme Court of Missouri addressed the propriety of the trial court overruling a motion for new trial in which four prospective jurors were unequivocally asked if they had in the past been a plaintiff or defendant in a lawsuit. None of the four jurors named made any response. It later developed each of the four jurors had been defendants in civil litigation, which placed the issue of their impartiality in question. This would leave but eight clearly impartial jurors to enter the verdict. The Missouri high court properly reversed the trial judge. It was clearly demonstrated in *Beggs*, there was a nexus between their prior experiences as defendants in civil actions and their ability to act as impartial jurors. No nexus exists in this case between the juror's opinion about smoking and the issue of the alleged failure of the doctor-defendant to properly diagnose the lung cancer.

In *Moore v. Middlewest Freightways, Inc.*, 266 S.W.2d 578 (Mo.1954), the Missouri Supreme Court reversed a plaintiff's verdict because one of the jurors admitted bias against the defendant on voir dire, and the trial court refused to excuse him for cause. The Missouri court recognized that "[t]he trial judge is and should be vested with broad discretion in determining the qualifications of veniremen to sit as jurors and his rulings thereon should not be disturbed unless they are clearly and manifestly against the evidence." 266 S.W.2d at 585. In light of the facts, the court stated that it was convinced the juror should not have been permitted to remain on the panel.

In *McNally v. Walkowski*, 85 Nev. 696, 462 P.2d 1016 (1969), the Supreme Court of Nevada relaxed Lord Mansfield's Rule, that a juror's statement may not be admitted to impeach a verdict in which the juror participated. There a 9–3 verdict was returned in the trial court for the defendant. Plaintiff obtained the affidavits of five of the jurors which demonstrated actual bias on the part of "several" of the jurors who deliberated in the case. The court held:

"We conclude therefore, that the jurors' affidavits were admissible for the limited purpose of showing *concealment of actual bias* by several of the jurors on their voir dire examination." 462 P.2d at 1019.

The Nevada high court said the trial judge erred in excluding the affidavits of the jurors,

and therefore abused his discretion in the matter.

While it is true the cases cited by the majority hold for the general rule that a litigant is entitled to a jury composed of twelve impartial jurors, there is nothing in the record in this case which demonstrates anything other than impartiality in this medical malpractice case. The fact the verdict was unanimous does demonstrate the twelve jurors who tried this case were of one mind.

It is interesting to note that in *Smith v. Maher*, 84 Okl. 49, 202 P. 321 (1921), one of the assignments of error was the refusal of the trial court to excuse a juror for cause because of his announced friendship with of the parties litigant. In reversing the judgment of the trial court because of the totality of errors in the record, this Court wrote with regard to the assignment of error regarding the questioned juror:

> "It is sufficient to say in reference to this assignment of error that, this being a civil action not requiring a unanimous verdict, and if this was the only error complained of and the record disclosed that the judgment of the court entered upon the verdict of was, in our judgment, substantially correct, we would deem any error committed in overruling the challenge for cause of the plaintiff to this juror insufficient to reverse the cause upon, . . . ."

The Court then went on to hold that because other, more significant, errors were committed during trial, the challenge for cause should have been sustained.

The majority does not call our attention to any other prejudicial error in the trial; and we believe the verdict to be substantially correct. We emphasize the error, if any there be, in the trial judge permitting the questioned juror to sit in the case at bar, is at most, harmless error.

I would deny the petition for certiorari in this case, thereby affirming the judgment entered upon the jury verdict.

I am authorized to state that Chief Justice HODGES, Vice Chief Justice LAVENDER, and Justice HARGRAVE join with me in the views expressed herein.