2006 OK CIV APP 20

**NBI SERVICES, INC., Fleetosborn Gilcrease Unit, a body politic, and NOCO Investment Co., Inc., Plaintiffs/Appellants,**

v.

**Eugene WARD, Jack Longstreet c/o Lea Ward Trust Management Entities, Defendants/Appellees,**

and

**Edward F. Reed Trust, Margaret R. Kosek Trust, and Mary Elizabeth Reed Trust, Intervenors.**

**No. 99,031.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 22, 2005.

Jack Mattingly, Sr., The Mattingly Law Firm, P.C., Seminole, OK, for Plaintiffs/Appellants.

Larry Jay McMains, Johnston & McMains, Seminole, OK, for Defendants/Appellees.

Opinion by JERRY L. GOODMAN, Judge (sitting by designation).

¶1 Plaintiffs, NOCO Investment Co., Inc. (NOCO), NBI Services Inc. (NBI), and the Fleet Osborn Gilcrease Unit (Unit), appeal from the trial court's orders entering judgment on a jury verdict finding Defendants Eugene Ward and Jack Longstreet c/o Lea Ward Trust Management Entities are entitled to more than $90,000.00 in damages related to Plaintiffs' use of Defendants' land, and awarding Defendants an attorney's fee. Based on our review of the record, the parties' briefs, and the applicable law, we affirm the decision of the trial court.

## FACTS

¶2 This is the second time this action has been before us on appeal. In appeal No. 98,960, we affirmed the trial court's denial of Plaintiffs' request for a permanent injunction that would have kept Defendants from blocking Plaintiffs' effort to build a water injection plant on Defendants' property without paying the surface owners and tenant. The Oklahoma Supreme Court denied Plaintiffs' petition for certiorari seeking review on the merits of that action.[1]

---

1. See order filed April 5, 2005, in appeal No. 98,960. The order also denied Defendants' motion for an appeal-related attorney's fee in that cause, without prejudice to renew and permits reconsideration of that motion in this appeal.

The order also reassigned No. 98,960 to this Court with permission to consolidate it with No. 99,031 for the limited purpose of dealing with an appeal-related attorney's fee. To date, however, Defendants have not renewed their motion seek-

¶3 NOCO is the owner of a .78301498 working interest in the Unit, a secondary recovery, water injection operation of which NBI is the current Unit operator. The Unit was created by a Plan of Unitization (Unit Plan), pursuant to 52 O.S.1971, §§ 287.1 through 287.15, unitizing management, operation, and further development of the Gilcrease Formation underlying Sections 25 and 26 in Seminole County. Defendant Eugene Ward (Ward) is a surface tenant and the Edward F. Reed Trust, Margaret R. Kosek Trust, and Mary Elizabeth Reed Trust (Reed Trusts) are surface owners of the Seminole County property where Plaintiffs' water injection facilities are located.[2] Ward is also the surface owner of a tract adjacent to the Reed Trust property that also was affected by Unit operations.

¶4 Plaintiffs initiated this action in September of 2001, seeking a temporary restraining order and permanent injunction prohibiting Defendants from interfering with Plaintiffs' asserted right to reasonable surface use under the Unit Plan. Defendants objected and counterclaimed. Ward sued for breach of contract, trespass, negligence, and nuisance; the Reed Trusts asserted the same theories of recovery and also asserted a conversion claim. All Defendants asserted Plaintiffs had contracted with them to pay $1.00 per foot for lines laid on their property and had breached the contract; and that Plaintiffs had trespassed by using unauthorized portions of the surface of Defendants' property. Defendants also sought actual and punitive damages under theories of negligence and nuisance, alleging Plaintiffs had not buried pipelines below plow depth, had failed to pick up oilfield debris, and had polluted Defendants' property by allowing saltwater to run over it.

¶5 The trial court initially entered a temporary restraining order against Defendants, and Plaintiffs constructed water injection facilities on the property. The trial court then bifurcated the case and tried the issue of a permanent injunction prior to trial on Defendants' counterclaims for surface damages. As noted above, the trial court ultimately denied Plaintiffs' request for a permanent injunction and dissolved the temporary restraining order.[3]

¶6 Trial on Defendants' counterclaims occurred in February of 2003. The jury found in favor of Defendants on their breach of contract, trespass, negligence, and nuisance claims, but in favor of Plaintiffs on Reed Trusts' claim of conversion. It awarded Ward $24,178.00 and Reed Trusts $67,435.00 in actual damages, but awarded no punitive damages to either party. Plaintiffs appeal, asserting allegations of error that, in essence, challenge the trial court's (1) denial of Plaintiffs' challenge for cause as to one member of the jury; (2) subject matter jurisdiction; (3) admission of certain evidence; (4) failure to sustain NOCO's in-trial demurrer to the evidence and motion to dismiss claiming lack of legal liability of a non-operator working interest owner; and (5) attorney's fee award to Defendants.

## STANDARD OF REVIEW

¶7 Trial court decisions going to the manner and conduct of a trial—such as whether to grant or deny a challenge for cause of a prospective juror, or whether to admit or exclude evidence—are subject to an "abuse of discretion" standard of review on appeal. *See e.g., Kansas City So. Ry. Co. v. Norwood,* 1961 OK 238, ¶ 0, 367 P.2d 722, 724 (syllabus by the court)("large discretion is vested in the trial court in determining competency and qualifications of jurors," such that trial court's action should not be disturbed unless an abuse of discretion is "clearly apparent"); *Jamison v. Oklahoma Power & Water Co.,* 1939 OK 163, ¶ 0, 90 P.2d 419, 419 (syllabus by the court)(trial court's ruling on challenge to juror for bias and prejudice "will not be reversed unless it appears that the court has

ing an appeal-related attorney's fee in appeal No. 98,960, nor have they moved for an appeal-related fee in appeal No. 99,031; therefore, we do not consider the issue of an appeal-related attorney's fee at this time.

2. The Edward F. Reed Trust, Margaret R. Kosek Trust, and Mary Elizabeth Reed Trust intervened and were added as defendants after the action was filed.

3. This decision was affirmed in appeal No. 98,-960 (cert. denied April 4, 2005).

abused its discretion to such an extent as to work injustice ...”); *Myers v. Missouri Pacific R. Co.,* 2002 OK 60, ¶ 36, 52 P.3d 1014, 1032 (“[a] judgment will not be reversed based on a trial judge’s ruling to admit or exclude evidence absent a clear abuse of discretion”).

¶ 8 Also within the realm of trial court discretion are issues concerning awards of an attorney’s fee. Thus, such awards also are subject to the abuse of discretion standard of review on appeal. *See Tibbetts v. Sight ’n Sound Appliance Centers, Inc.,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046. “As a general matter, an abuse of discretion review standard includes appellate examination of both fact and law issues ... abuse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision.” *Id. See also Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591, 608; *Fent v. Oklahoma Natural Gas, Co.,* 2001 OK 35, ¶ 12, 27 P.3d 477, 481.

¶ 9 On the other hand, matters presenting issues of law are reviewed de novo by the appellate court. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.* 1996 OK 125 n. 1, 932 P.2d 1100, 1103, n. 1. Such issues include those which claim error in the denial of a demurrer to evidence, and those challenging the subject matter jurisdiction of the court. *See Ware Rubber Co. v. Sewell,* 1939 OK 279, ¶ 6, 91 P.2d 667, 668 (demurrer to evidence); *Tulsa Order of Police Lodge No. 93 ex rel. Tedrick v. City of Tulsa,* 2001 OK CIV APP 153, ¶ 12, 39 P.3d 152, 155 (subject matter jurisdiction). Review “de novo” means that no deference is accorded the trial court decision: “An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court’s legal rulings.” *Neil Acquisition,* 1996 OK 125 n. 1, 932 P.2d at 1103, n. 1. The case at bar includes issues encompassing both the abuse of discretion and de novo review standards.

## ANALYSIS

### Alleged Error in Jury Selection

¶ 10 Plaintiffs first assert error in the trial court’s denial of their challenge for cause of a prospective juror during voir dire.

The juror, Ms. F, was called as a potential panel member after Plaintiffs had exhausted all three peremptory challenges. Relevant parts of the exchange between the trial court, counsel, and Ms. F, are set forth in part below:

THE COURT: Okay. Do you know of any reason right now that you would not be qualified to be a juror in this case?

[Ms. F]: Well, my experience with the oil fields. Everywhere they leave, there’s junk.

THE COURT: So you’ve had some experience with that?

[Ms. F]: Yes.

THE COURT: Do you own property where there’s—where you’ve had some work done?

[Ms. F]: Yes.

THE COURT: Okay, and do you own that property now?

[Ms. F]: Yes.

THE COURT: And when was the last time you had any problem with an oil company?

[Ms. F]: They’re still—it don’t do any good to do anything. Ours is still trash, and pipe, and oil, and barrels, and got three oil wells on it, and it’s all a mess.

THE COURT: I’m sure the attorneys are going to want to ask you some more questions about that in just a minute....

[Other Juror]: ... We have 80 acres and we have a couple [of oil companies] that goes across our land.... A pipeline, and the electric posts, and a well that’s on the other side of our land.

[Plaintiff counsel]: Has that caused any disputes?

[Other Juror]: No....

...

[Plaintiff counsel]: [Ms. F], you sound a little upset.... And some of our earlier questions where you know some cases jurors don’t make the best jurors on, could this be one of them?

[Ms. F]: This would be.

[Plaintiff counsel]: And you think in all good conscious [sic] and honesty it would

just be better you be dismissed from this case?

[Ms. F]: Right.

. . .

[Plaintiff counsel]: Do we make our challenge now or later, Judge?

[Defense counsel]: I would like to inquire.

. . .

[Defense counsel]: . . . [Ms. F] . . . I understand that you had some bad experience with oil companies. But you understand that there is a right way to do oil operations and there's a wrong way to do it?

[Ms. F]: Yes.

[Defense counsel]: Some do it the wrong way, some do it the right way. If evidence is put on in this case, would you be able to fairly look at it and say, okay, even though, I've had an experience with it being done the wrong way, let's decide whether they did it the wrong way in this case, could you do that?

[Ms. F]: I'd keep an open mind.

[Defense counsel]: Yeah. I mean, that's really what we are about here. It's not whether somebody, you know, did it the wrong way. Obviously, that leaves a memory on your part, but it just gives us something to compare, and can you be open-minded, and can you be fair, and can you hear the evidence?

[Ms. F]: Yes.

[Defense counsel]: Is there anything else about this case that you've heard? You don't know what the evidence is yet, I guess?

[Ms. F]: No.

[Defense counsel]: And are you the type of person that can listen carefully, and . . . listen to all of the evidence from the beginning to the end? Is that something you feel like you can do?

[Ms. F]: Yes.

[Defense counsel]: Do you have time to give to this case?

[Ms. F]: Sure.

[Defense counsel]: So you know of no reason why you couldn't hear this case, do you?

[Ms. F]: No.

. . .

THE COURT: [Ms. F], when was the last time you had a problem on your property that you had to deal with, with oil and gas company?

[Ms. F]: There is still a problem out there. It's a mess.

THE COURT: Is it property where your residence is?

[Ms. F]: Where there is cattle running on it.

THE COURT: Okay. Is this something that's going on right now then?

[Ms. F]: Yeah. It's—we asked something to be done. And they said, you know, the well is not pumping or anything, and then they go down there, and stick another valve on it, and start the time, and it pumps a little while.

THE COURT: How long have you owned this property?

[Ms. F]: Ten years.

THE COURT: Okay. Are you in a position where you can listen to all of the evidence that's presented in this case and make a decision based upon that evidence that you hear from this witness stand?

[Ms. F]: Right.

THE COURT: Can you do that?

[Ms. F]: Right.

THE COURT: I realize that everybody brings certain memories or experiences into the courtroom in just about every situation. Can you put aside your own personal experiences and make a decision based upon the evidence that you hear here?

[Ms. F]: Yes.

THE COURT: Okay. Have you had any litigation or anything in the courthouse regarding this?

[Ms. F]: No.

THE COURT: Okay. Do you know the names of any of the parties that are involved, the name of the—

[Ms. F]: One of them is Jackson, and one of them is Barkhimer, and, you know, I am not real sure.

THE COURT: Okay. Let me see counsel at the bench.

. . .

THE COURT: I don't think a challenge for cause is there; okay?

[Plaintiff counsel]: We would take exception to the Court's ruling.

██ ¶ 11 Plaintiffs contend the trial court should have stricken Ms. F for cause because her comments demonstrate bias against the oil industry generally due to her personal experience. Because a person selected to serve on a jury is presumed to be competent and qualified to serve, Plaintiffs bear the burden of demonstrating both the substance of their complaint and that the alleged error caused them material prejudice. *See Sinclair Oil & Gas Co. v. Crane,* 1935 OK 873, ¶ 9, 51 P.2d 711, 713; *Kansas City So. Ry. Co.,* 1961 OK 238 at ¶ 22, 367 P.2d at 727.

██ ¶ 12 Jurors are not required to be totally ignorant of all the facts and issues in a case. Rather, "[i]t is sufficient that the jurors can declare under oath that they are able to act impartially and fairly upon the matters submitted to them." *Nauni v. State,* 1983 OK CR 136, ¶ 9, 670 P.2d 126, 130. As noted by the court in *International News Service v. News Pub. Co. of Enid,* 1926 OK 411, ¶ 0, 247 P. 87, 87 (syllabus by the court): "Ordinarily, where a juror testified that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an 'impartial juror,' under our Constitution and the statutes of this state."

¶ 13 In *Sinclair Oil & Gas Co.,* 1935 OK 873, 51 P.2d 711, the Oklahoma Supreme Court addressed whether a prospective juror's potentially negative opinion about a wellsite pollution situation required the trial court to disqualify the juror. The prospective juror had stated during voir dire that he had an opinion about the effect that an overflow of polluted water would have on agricultural land. He denied knowing anything about the specific facts of the case, and stated that he believed he could fairly review the facts and render an impartial verdict. The court held that the juror was properly permitted to serve, and in the syllabus explained:

> An opinion in the mind of a prospective juror, in the trial of a civil action, concerning one of several issues involved in the action, is not tantamount to an opinion as to who should prevail in the action . . . and the fact that one or several prospective jurors may have such an opinion does not necessarily disqualify them. . . .

*Id.*

¶ 14 We disagree with Plaintiffs' argument that the Oklahoma Supreme Court's holding in *Parrish v. Lilly,* 1993 OK 80, 883 P.2d 158, is dispositive. In *Parrish,* the Court held the trial court abused its discretion when it failed to strike a juror for cause "where the juror repeatedly attempted to express that he had formed a preconceived opinion that was prejudicial to the case, and where the record reveal[ed] that the trial judge himself was not clearly satisfied the juror could be fair and impartial." *Id.* at ¶ 16, 883 P.2d at 162. The Court found that such error could not be considered harmless because the Court "cannot speculate what effect the biased juror had upon the trial." *Id.*

¶ 15 Though more recent than *Sinclair Oil & Gas,* the *Parrish* case is distinguishable in that the juror in *Parrish* repeatedly attempted to claim that he was prejudiced, and the trial court itself indicated it was not satisfied that the juror could be impartial. In the case at bar, on the other hand, as was the situation in *Sinclair,* the juror indicated she could be impartial and look only at the evidence in this case, and the trial court was clearly satisfied with her answers and impartiality. We find, and therefore hold, that the trial court did not abuse its discretion in denying Plaintiffs' challenge to Ms. F for cause.

### Alleged Error Related to Subject Matter Jurisdiction

¶ 16 Proposition 2 of Plaintiffs' brief-in-chief concerns the argument initially addressed at the preliminary injunction hear-

ing: Plaintiffs' contention that the trial court lacked subject matter jurisdiction because the Oklahoma Corporation Commission (OCC) has "exclusive jurisdiction" to decide whether Plaintiffs were entitled, under the Unit Plan, to place a water injection facility on Defendants' property. We addressed this issue in appeal No. 98,960, and will not revisit it here other than to restate our holding that the trial court had jurisdiction to resolve this private dispute requiring interpretation of the unitization plan and related documents.

¶ 17 In Proposition 4, Plaintiffs assert the trial court erred when it denied Plaintiffs' motion to dismiss—filed more than a year after Plaintiffs filed their petition in this action—claiming the OCC has "exclusive jurisdiction" to hear complaints about oilfield pollution. This argument was not before us in appeal No. 98,960, but it also concerns the subject matter jurisdiction of the district court. Specifically, Plaintiffs challenge the district court's jurisdiction to hear and decide Defendants' counterclaim for damages alleged to have resulted from pollution from oilfield operations.

¶ 18 Plaintiffs refer to a number of statutory provisions that vest the OCC with "exclusive jurisdiction" to make and enforce rules and orders concerning wellsite construction, operation, maintenance, and remediation, as well as the handling, storage, and disposition of deleterious substances. *See e.g.,* 27A O.S. 2001, § 1–3–101(E)(1) and (2); 52 O.S.2001 § 139; and 17 O.S.2001, §§ 52, 53.1 and 53.2.

¶ 19 Plaintiffs do not refer us to case law supporting this argument, nor do they discuss the argument's implication on long-standing Oklahoma law recognizing district court jurisdiction to provide a remedy for damages based on common law theories of recovery, such as private nuisance and negligence. *See, e.g., Harper–Turner Oil Co. v. Bridge,* 1957 OK 124, 311 P.2d 947 (action for negligence in plugging well resulting in pollution that damaged water well); *Tenneco Oil Co. v. Allen,* 1973 OK 129, 515 P.2d 1391 (action for damages to land from escaping oil and salt water including cleanup costs); *Sunray DX Oil Co. v. Brown,* 1970 OK 183, 477 P.2d 67 (action for damages resulting from leaking pipeline); *Union Texas Petroleum*

*Corp. v. Jackson,* 1995 OK CIV APP 63, 909 P.2d 131, (The proper forum for a landowner to recover damages for nuisance caused by encroaching saltwater is in district court.). Plaintiffs also do not argue the applicability of the doctrine of "primary jurisdiction," which allows a court to refrain from deciding a case until an administrative agency has fulfilled a statutory obligation. *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1378 (10th Cir.1989). Rather, Plaintiffs adamantly insist only that the OCC has "exclusive jurisdiction" and that this action must therefore be dismissed. We disagree.

¶ 20 As noted above, it is well-established that Oklahoma district courts have jurisdiction to afford relief for claims of nuisance and negligence. It also is established that legislation "cannot abrogate the common law *by implication;* rather, its alteration must be clearly and plainly expressed." *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, ¶ 11, 833 P.2d 1218, 1225. By mandate of 12 O.S.2001, § 2, the common law remains in full force in this state, "unless a statute explicitly provides to the contrary." *Id.* There is a presumption that favors preservation of common-law rights, and "[w]here the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive." *Tate,* ¶ 11, 833 P.2d at 1225–26 (footnotes and emphasis omitted).

¶ 21 Plaintiffs' argument confuses the statutory grant of exclusive jurisdiction to the OCC to *regulate* oil and gas exploration and production activities in Oklahoma, with the jurisdiction to *afford a remedy* to those whose common law rights have been infringed by either the violation of those regulations or otherwise. While the statutory directive is clear that the OCC has exclusive jurisdiction—*vis à vis* other administrative agencies—to make and enforce environmental regulations related to oilfield operations, the statutes do *not* vest the OCC with exclusive authority to grant a *remedy* for wrongs that originated under the common law. Plaintiffs do not direct us to any statute abrogating the common law in this area or suggesting that a claimant's exclusive *remedy* for oilfield-related pollution must lie with the OCC. We

therefore reject Plaintiffs' contention on this allegation of error, as well.

### Alleged Error in Admission of Evidence: Exhibit 23

¶ 22 Plaintiffs' third proposition of error contends it was reversible error to admit Defendants' Exhibit 23 and the testimony by a contractor supporting it. Exhibit 23 is a letter containing the contractor's cost estimates for repair and remediation of alleged damage to Defendants' property. The exhibit includes an estimate of the cost to remove and re-bury certain "flowlines" which, Defendants alleged, were not buried below plow depth as required by an agreement between the parties. Plaintiffs objected to the portion of the estimate contemplating such removal and re-burial, claiming the evidence was improper because Defendants are not entitled to "appropriate" or "convert" Plaintiffs' property—i.e., the flowlines—without a district court injunction or order from the OCC. The only authority cited by Plaintiffs in support of this argument is a state statute addressing OCC jurisdiction over site remediation at well sites.

¶ 23 We reject Plaintiffs' argument, for several reasons: First, it is undisputed that Defendants' claim against Plaintiffs is based in part on the manner in which Defendants constructed the water injection plant and associated facilities, including the flowlines. Under Oklahoma law, a landowner injured by a private nuisance "may abate it by removing, or, if necessary, destroying" the item constituting the nuisance as long as the landowner does not commit a "breach of the peace or do [ ] unnecessary injury." 50 O.S. 2001, § 14; *see also Oklahoma City v. Hoke,* 1919 OK 244, 182 P. 692. As such, the basic premise of Plaintiffs' argument—that Defendants could not legally remove the lines, even if they constituted a nuisance—is incorrect.

¶ 24 Further, the evidence in question is clearly relevant to determining the amount of damages sustained by Defendants. The proper damages measure in a nuisance case requires comparing cost of remediation or removal of the nuisance to the value of the property. *See e.g., Houck v. Hold Oil Corp.,* 1993 OK 166, ¶¶ 32–38, 867 P.2d 451, 460–61;

*Thompson v. Andover Oil Co.,* 1984 OK CIV APP 51, ¶¶ 15–17, 691 P.2d 77, 82–83. All of the costs included in the contractor's letter were directly related to remediation of the land in question.

¶ 25 Finally, even if we assume the validity of Plaintiffs' concern that Defendants' removal and re-burial of improperly placed pipelines would constitute conversion, there is nothing in the record to indicate that Defendants have not already obtained, or do not intend to obtain, such an order from the court or the OCC. There also is no evidence that Defendants, by removing the offending flowlines, would be in violation of an OCC or court order.

¶ 26 Accordingly, in light of the relevance of the evidence in question, the right of Defendants to abate a nuisance, and the absence of information or authority in the record showing otherwise, we find no abuse of discretion in the trial court's admission of Exhibit 23.

### Alleged Error in Admission of Evidence: Value of Pipeline Right-of-Way

¶ 27 Proposition 5 of Plaintiffs' Brief contends the trial court erred by allowing Defendants to introduce evidence of the value of pipeline right-of-way related to the water injection facility. Plaintiffs argue such evidence was irrelevant because Plaintiffs had "a right to lay lines without obtaining right-of-way permission" under the terms of their oil and gas leases and the Unit Plan for the Unit.

¶ 28 We considered a similar issue in our opinion in Plaintiffs' previous appeal, No. 98,-960. There, we affirmed the trial court's order denying Plaintiffs a permanent injunction, and finding that (1) Plaintiffs had placed the water injection plant on the surface "without the agreement of ... Defendant[s] and contrary to the provisions of the Fleet-Osborn Gilcrease Plan of Unitization," and (2) Plaintiffs had "no right to locate their water injection plant on the [Defendants'] property." We again refer to our analysis in that opinion and do not revisit the issue here.

¶ 29 Accordingly, because the language of the documents on which Plaintiffs rely does

not support an interpretation that renders right-of-way value irrelevant, we reject Plaintiffs' contention that the trial court erred in admitting evidence of such value.

### Alleged Error in Denying NOCO Investment, Inc.'s Demurrer to Evidence

¶ 30 NOCO asserts the trial court erred by denying its demurrer to the evidence and motion to dismiss at the close of Defendants' case-in-chief. NOCO argues that it is only a working interest owner, and that, because NBI is the Unit operator and is an independent contractor, NOCO cannot be held liable as either an operator or as NBI's employer for wrongs that NBI committed in operating the Unit.

¶ 31 The record shows that NOCO—owner of a majority of the working interest in the Unit—was a named Plaintiff initiating this action against Defendants, and a key participant in the litigation. The pleadings and other papers filed in the case clearly suggest that, though NBI is the named Unit operator, NOCO in fact controls much of the Unit's operations. For example, the allegations of the petition include statements such as, "[a]fter *NOCO* became the owner, *it* began certain testing and reworking of the [Unit] to increase its production," and "Plaintiffs are experiencing monetary damages daily because of Defendant's activities of keeping *Plaintiffs and their agents, representatives, and employees from discharging their normal operating duties.*" See Petition, filed September 13, 2001, at ¶¶ 6–7 (emphasis added). An "Amended Petition," filed December 2, 2002, alleges that Defendant Ward "wrongfully and intentionally prevented *Plaintiffs from* entering *and operating* their oil and gas lease properties described

in the original Petition on file herein." (Emphasis added.) Plaintiffs' proposed jury instructions recite that the Unit is controlled by leasehold owners, identify NOCO as a leasehold owner, and state that Plaintiffs collectively "own and operate" the Unit. The issue of NOCO's alleged non-liability due to its status does not appear on the pre-trial conference order filed in the case, nor was the issue addressed in the proposed jury instructions submitted by Plaintiffs.

¶ 32 NOCO's reliance on *Union Texas Petroleum Corp. v. Jackson,* 1995 OK CIV APP 63, 909 P.2d 131, is misplaced. While it is true that the court in *Union Texas* declined to impose liability on a non-operator working interest owner, the issue concerned interpretation of an OCC rule that addressed the responsibility of operators and other persons "conducting operations." *Id.* at ¶¶ 55–56, 909 P.2d at 148. The court found no evidence that the non-operator working interest owner had ever been an operator or "conducted operations" on the property, and also noted that the alleged source of contamination was not "active" but "historic." *Id.* at ¶ 56, 909 P.2d at 148. Here, as noted above, there is evidence to support a finding that NOCO is an active participant in Unit operations. In addition, the damage to Defendants' property not only is not "historic," but it is alleged to be current, active, and caused by Plaintiffs' activities since this action was filed.

¶ 33 As such, to the extent that NOCO claims it has no liability because it was merely a working interest owner and not an "operator," we find ample evidence in the record to support a finding otherwise. We therefore agree with the trial court's decision denying NOCO's demurrer and motion to dismiss on this ground.[4]

---

4. Neither party refers us to an Oklahoma Supreme Court case specifically addressing the liability of a non-operator working interest owner for damages to a surface owner resulting from failure to pay for surface use or pollution in a Unit. We note, however, that the U.S. District Court for the Western District of Oklahoma dealt with a similar issue in *Branch v. Mobil Oil Corp.,* 788 F.Supp. 531, and denied summary judgment to a defendant who denied liability because it was not the unit operator. The court found the evidence showed the defendant owned oil and gas leases in the unit, was therefore a working interest owner, and thus could be held liable. The court stated:

> The operator of the unit is merely the agent for the lessees who form the unit.... Accordingly, to the extent an operator of the Unit created or maintained a nuisance ... during the time that [the defendant] was a working interest owner in the Unit, [the defendant] is liable as a principal for the operator-agent's actions ... unless the operator was acting outside the scope of its authority, which [the defendant] has not alleged or shown.

Alleged Error Related to Attorney's Fee[5]

¶ 34 Following trial, Defendants requested fees and costs related to all aspects of this proceeding at the trial court level, including the trial court's denial of Plaintiffs' requested permanent injunction and dissolution of a previously-entered preliminary injunction. The trial court awarded Defendants an attorney's fee and costs in the full amounts requested, $36,718.00 and $2,743.35, respectively.

¶ 35 As noted above, we review a trial court's attorney's fee award, factually and legally, for abuse of discretion. Abused discretion should be found only when "the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." *Tibbetts,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046.

¶ 36 Plaintiffs have stipulated to the reasonableness of the number of hours expended and the hourly rate. Plaintiffs argue, however, that the trial court improperly allowed recovery for fees related to work on Defendants' conversion and breach of contract theories of recovery.

¶ 37 Defendants did not prevail on their conversion theory and do not claim fees were allowed by the contract in question. Defendants do claim, however, that an attorney's fee is authorized by 12 O.S.2001, §§ 940, 1384.2, and 1392. Section 940 permits recovery of an attorney's fee, interest, and costs by the prevailing party in "any civil action to recover damages for the negligent or willful injury to property." Section 1384.2 allows damages, including attorney's fee, to "the party restrained" by a temporary restraining order if it is finally determined that the order should not have been granted; and § 1392 provides for an attorney's fee to the "party injured" in an injunction proceeding "if it be finally decided that the injunction ought not to have been granted."

¶ 38 Plaintiffs argue that several time entries on Defendants' counsel's time records relate solely to Defendants' conversion claim. However, the time entries cited by Plaintiffs do not support this argument; in fact, it is

*Id.* at 533.

impossible to break out time devoted solely to the conversion theory merely from looking at defense counsel's time sheets. We therefore reject Plaintiffs' argument on this ground.

¶ 39 Plaintiffs next contend that some of the damages awarded to Defendants were related to "causes of action" that "do not fit under § 940" and therefore cannot be the basis for an attorney's fee award. Specifically, Plaintiffs argue the jury awarded Defendants damages based in part on the cost/value of pipeline right-of-way and the cost to bury flowlines below plow depth, and that these are in the nature of damages for breach of contract rather than for negligent or willful injury to property.

¶ 40 Even if we adopted Plaintiffs' characterization of the damages, however, we nonetheless disagree with their conclusion. Plaintiffs' argument ignores the other basis on which Defendants are entitled to receive an attorney's fee and costs—i.e., 12 O.S.2001, §§ 1384.2 and 1392. This proceeding was initiated by Plaintiffs, who sought and obtained a temporary restraining order and temporary injunction allowing them to enter Defendants' property and install water injection facilities that involved, among other things, digging up the surface and laying pipelines. The trial court and jury later determined that the evidence showed Plaintiffs were not entitled to take such actions without paying for the right to do so—thus leaving Defendants as the "part[ies] injured" by the initial grant of the injunction. The court's final decision that the preliminary injunction "ought not to have been granted" therefore entitled Defendants to an attorney's fee and costs under § 1392 for all injuries "proximately resulting" from the order that wrongly restrained Defendants from exercising "rights of ownership" over their land. *See Wyatt v. Marinoff,* 1928 OK 221, ¶ 0, 268 P. 224, 224–225 (syllabus by the court).

¶ 41 Further, it is undisputed that a large portion of the damages claimed by Defendants were in fact for physical injury to

**5.** See footnote 1, *supra,* concerning appeal-related fees in this appeal and appeal No. 98,960.

property. The fact that Defendants counterclaimed under a breach of contract theory does not preclude the right to an attorney's fee for negligent injury to property under § 940. *See A.T. Clayton & Co., Inc., v. Missouri–Kansas–Texas Ry. Co.,* 901 F.2d 833 (10th Cir.1990). Even though § 940 contemplates that an attorney's fee is recoverable only for the negligent or willful *physical* injury to property, the Oklahoma Supreme Court has not rejected application of the statute simply because the pleaded theory was something other than negligence. *See Turner Roofing & Sheet Metal, Inc. v. Stapleton,* 1994 OK 36, 872 P.2d 926.

¶ 42 Reviewing the record as a whole, we find that the trial court's attorney's fee award to Defendants has a rational basis in the evidence and is in accordance with the law.

## CONCLUSION

¶ 43 The trial court did not abuse its discretion in its denial of Plaintiffs' challenge for cause to a potential juror; its admittance of Defendants' Exhibit 23 and related evidence concerning the estimate to repair and remediate alleged damage to Defendants' property; its allowance of Defendants' evidence of the value of pipeline right-of-way related to the water injection facility; or in its award of an attorney's fee to Defendants for trial-related expenses. We also agree with the trial court's denial of Plaintiffs' motions to dismiss for lack of subject matter jurisdiction, and its denial of Plaintiff NOCO's demurrer to the evidence. Accordingly, the decision of the trial court is affirmed in all respects.

¶ 44 AFFIRMED.

REIF, P.J., and WISEMAN, J., concur.